**BOMAR v. KEYES et al.**

No. 224, Docket 20533.

Circuit Court of Appeals, Second Circuit.

May 16, 1947.

---

138

Willie Melmoth Bomar, pro se.

Arthur H. Kahn and Charles E. Murphy, Corp. Counsel, both of New York City (Seymour B. Quel, of New York City, of counsel), for appellees.

Before L. HAND, SWAN, and CLARK, Circuit Judges.

L. HAND, Circuit Judge.

The plaintiff appeals from a judgment summarily dismissing her complaint in an action under the Civil Rights Act[1] to recover damages for "deprivation" of a privilege "secured" by one of the "laws" of the United States. The record is to the last degree confusing and inadequate; but we gather that the grievance intended to be set forth was that plaintiff, a "probationary teacher of home economics" in a Brooklyn high school, was discharged from that position because of a complaint lodged against her by the "probationary principal" of the school—the defendant, Keyes—with the Board of Education of New York. The gravamen of the complaint which Keyes made to the Board was that the plaintiff had been absent from her teaching from March 7, 1939 to April 4, 1939, while serving upon a federal jury. The Board discharged her on October 30 or 31, 1939— the exact date is uncertain—and on February 6, 1940, she appealed to the Commissioner of Education of the State of New York and applied for re-instatement, alleging that she had been discharged because of "displeasure with petitioner's assumption of jury duty." On October 20, 1940, the Commissioner dismissed her appeal upon the ground that she "had not secured permanent tenure. Having been duly dismissed by the Board of Education during her probationary period, such dismissal is not subject to review." On February 14, 1941, she brought an action in the Supreme Court of the State of New York for Albany County[2] against the Commissioner of Education and the Board of Education, again seeking re-instatement, in which she alleged that she had been "penalized for her proper and legal performance of her duties and obligations of citizenship, including the assumption of jury duty." This petition was also dismissed upon the merits upon the same ground that the Commissioner of Education had dismissed her previous appeal.[3] She filed her complaint in this action on October 31, 1945, but the defendants were not served with the summons and complaint until December of that year.

The first question is whether the district court had jurisdiction under the Civil Rights Act[4] which, with proper omissions, reads as follows: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State * * * subjects * * * any citizen * * * to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law * * *." The Judicial Code[5] provides that jurors in the courts of United States "shall have the same qualifications * * * and be entitled to the same exemptions, as jurors of the highest court of law in such State may have and be entitled to * * *." Women are qualified jurors in the County of Kings,[6] but they are "entitled to exemption from service * * * upon claiming exemption."[7] The jurisdiction of the district court therefore depends upon whether the Judiciary Act,[5] which thus indirectly qualified women as federal jurors, but entitled them to exemption if they claimed it, conferred upon them a "privilege" within the Civil Rights Act.[8] Although the books are full of cases under that statute concerning

[1] § 43, Title 8 U.S.C.A.

[2] Article 78, New York Civil Practice Act.

[3] Matter of Bomar v. Cole, 177 Misc. 740, 32 N.Y.S.2d 825.

[4] § 43, Title 8 U.S.C.A.

[5] § 411, Title 28 U.S.C.A.

[6] § 596, New York Judiciary Law, Consol.Laws, c. 30.

[7] § 720 of New York Judiciary Law.

[8] § 43, Title 8 U.S.C.A.

deprivation of rights and privileges, sesured by the Constitution, we have been unable to find any in which the right or privilege at stake was secured by a "law" of the United States. Nevertheless the language is so plain that the only question is whether this particular "law" secured to the plaintiff a "privilege." By that word we understand a freedom to assert a legal right or a legal power: in this case, the power to take part in the administration of justice. All sorts of desires may, and do, impel people to sit on juries: to some it gives a sense of importance; some deem it an imperative moral duty; some like the spectacle; some enjoy its ironies; some even find it profitable. We do not see how it can be questioned that to prevent a person, who wishes to do so, to serve on a federal jury, is to deny an interest which the statute means to protect. True, the plaintiff did serve upon the jury—literally, she was not "prevented" from doing so—but it would emasculate the act either to deny protection against reprisal to those whom threats did not deter, or to leave without recourse those who were later made the victims of reprisals of which they had not been warned. Indeed, this is the inevitable implication of Douglas v. Jeannette,[9] in which those aggrieved by prospective prosecution for the exercise of their constitutional privileges, were remitted to their defence, if an attempt should be made to punish them.

 That the plaintiff's discharge was "under color" of a state statute scarcely needs discussion, and indeed follows from the very grounds given both by the Commissioner of Education and the judge in the state court. Both declared as their reason that, since under the New York Education Law [10] the plaintiff was only a "probationary teacher," her superiors were free to discharge her for any reason or no reason. From this it was thought to follow that, if they discharged her because she had served upon a federal jury, the discharge was lawful, regardless of the Civil Rights Act. It is quite another question whether either of the defendants is in fact liable. The City of New York at least is not, for it had no part in the supposed wrong; and the complaint was properly dismissed as to it. The statute provides that "the educational affairs of each city shall be under the general management and control of a board of education";[11] and the Board is a corporate body which may be sued,[12] and to which all claims must be presented.[13] On the other hand, for the following reasons we cannot say upon the present scanty record that by no possibility can the plaintiff have a claim against Keyes.[14]

 We start with the assumption that it was Keyes's complaint which caused the Board of Education to discharge the plaintiff, and that the ground of the discharge was her service upon a federal jury. If so, both Keyes and the Board united to cause pecuniary loss to the plaintiff by an act which the statute had made a legal wrong: Keyes, by instigating the Board, the Board by acting upon her instigation. We do not mean to suggest that a teacher may absent herself from her work indefinitely, and serve on a jury without regard to her duty: i. e., that she may choose her own time or stay away as long as she pleases. Certainly there are "reasonable" limits to the exercise of her privilege; but the question whether she kept within such limits we cannot decide now; it must be tried, for all we have is that her service as such was the ground for her discharge. That wrong is independent of any breach of contract, and would be the same, if Keyes had induced the Board not to employ the plaintiff; indeed, we assume that her discharge by the Board was not a breach of contract at all. Nevertheless, it may have been the termination of an expectancy of continued employment, and that is an injury to an interest which the law will protect against invasion by acts themselves unlawful, such as the denial of a federal privilege." [15]

 Neither the proceeding before the Commissioner of Education, nor the action

[9] 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324.

[10] § 872(1).

[11] § 865, New York Education Law, Consol.Laws, c. 16.

[12] § 300, New York Education Law.

[13] § 868-b, New York Education Law.

[14] Dioguardi v. Durning, 2 Cir., 139 F.2d 774.

[15] Restatement of Torts § 766(2).

in the New York Supreme Court, was a bar to the maintenance of such an action; nor did anything there determined raise an estoppel. Although it is by no means clear, we will assume arguendo that the "cause of action" involved in each—re-instatement of the plaintiff in her position—was the same as that here at bar; and also that, if the court decided that the plaintiff might be discharged for the exercise of her privilege, though "reasonable," the conclusion of law was an estoppel.[16] We may do both, because Keyes was not a party either to the proceeding or to the action; and, being a joint tort-feasor with the Board and liable separately, she was not a "privy" to the judgment in its favor.[16] It is true that to this doctrine there is an exception, when the joint tort-feasors are mutually in a position where one may call upon the other for exoneration or contribution. An instance is where the liability of one is imputed to the other, as an agent's to his principal; or where one must indemnify the other. In such cases an earlier judgment in favor of the person primarily liable is a good bar in favor of the party secondarily liable, for it will defeat his recourse over;[17] because the recourse over is in the nature of subrogation, and the surrogate, if he pays the judgment, will find his claim against the party primarily liable barred by the judgment in the first action. It does not appear that the defendant, Keyes, would have recourse over against the Board, if the plaintiff recovered in the case at bar. It is true that the New York Education Law[18] does give to a "member of the teaching * * * staff" a right over against the Board for "negligence * * * resulting in personal injury or property damage"; but, certainly this on its face does not cover the situation at bar. We do not finally pass upon that question now, for the point was not argued; the trial court will be free to consider it de novo, as well as the question—if it should hold that, because Keyes had recourse over, she was a "privy" to the state judgment—whether that judgment was a bar or an estoppel. All we decide now is that, as the case comes to us, she appears not to be a "privy," and that for that reason that judgment is neither a bar nor an estoppel.

■■. There remains only the question of the statute of limitations. As we have said, it is not altogether clear whether the plaintiff was discharged as of October 30th or 31st, 1939; and the applicable period is six years.[19] We leave open the questions, not only when the plaintiff was in fact discharged, but whether if the discharge was on the 30th, the complaint was filed too late on any theory. However, we now hold that it is the filing of the complaint which tolls the statute. We think that Rules 3 and 4(a) of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, have made no longer applicable § 17 of the New York Civil Practice Act, which fixes the beginning of the action at the date when the writ is served, or is put into the sheriff's hands for service. The Rules have with some modification adopted the practice which was apparently general in equity: i. e., that the filing of the complaint, when followed by lodging the writ in the marshal's hands, will toll the statute.[20] Therefore, we cannot see that any question arises except whether they go beyond the warrant of the statute:[21] "the forms of process, writs, pleadings, and motions, and the practice and procedure in civil actions at law. Said rules shall neither abridge, enlarge, nor modify the substantive rights of any litigant." We have not to deal with a case in which the limitation is annexed as

---

16 Bigelow v. Old Dominion Copper Co., 225 U.S. 111, 32 S.Ct. 641, 56 L.Ed. 1009, Ann.Cas.1913E, 875; Restatement of Judgments § 94.

17 Fish v. Vanderlip, 218 N.Y. 29, 112 N.E. 425, Ann.Cas.1916E, 150; Good Health Dairy Products Corp. v. Emery, 275 N.Y. 14, 9 N.E.2d 758, 112 A.L.R. 401; Elder v. New York & Penn. Motor Express Co., 284 N.Y. 350, 31 N.E.2d 188, 133 A.L.R. 176; Restatement of Judgments, §§ 96 and 99.

18 § 881-a.

19 New York Civil Practice Act, § 48 (2).

20 Farmers L. & T. Co. v. Lake St. El. R. Co., 177 U.S. 51, 20 S.Ct. 564, 44 L. Ed. 667; Linn & Lane Timber Co. v. United States, 236 U.S. 574, 35 S.Ct. 440, 59 L.Ed. 725; United States v. Hardy, 4 Cir., 74 F.2d 841.

21 §§ 723b and 723c, Title 28 U.S.C.A.

a condition to the very right of action created.[22] The Civil Rights Act [23] is not cast in that form; and when a right is not so conditioned, the statute of limitations is treated as going to the remedy.[24] We are content therefore to follow the Tenth Circuit,[25] in holding that the filing of the complaint tolls the statute. In the district courts there have been four decisions in accord,[26]—two however by the same judge —and none contra. We do not forget Judge Miller's ruling in Yudin v. Carroll,[27] where the plaintiff himself took over the service of the summons and complaint, as permitted by Rule 4(c). We leave open the question whether in such a case any subsequent delay should not be charged to the plaintiff and count in computing the period of limitation. Nothing of the sort appears to have happened in the case at bar.

Judgment reversed; cause remanded for trial.

[22] The Harrisburg, 119 U.S. 199, 214, 7 S.Ct. 140, 30 L.Ed. 358.

[23] § 43, Title 8 U.S.C.A.

[24] Michigan Insurance Bank v. Eldred, 130 U.S. 693, 9 S.Ct. 690, 32 L.Ed. 1080.

[25] Isaacks v. Jeffers, 10 Cir., 144 F.2d 26.

[26] Gallagher v. Carroll, D.C., 27 F.Supp. 568; Schram v. Koppin, D.C., 35 F.Supp. 313; Schram v. Costello, D.C., 36 F. Supp. 525; Schram v. Tobias, D.C., 40 F.Supp. 470.

[27] D.C., 57 F.Supp. 793.