Mrs. Robbie **WYNN** et al., Plaintiffs,

v.

**INDIANA STATE DEPARTMENT OF PUBLIC WELFARE** et al.,
Defendants.

**Civ. No. 69 F 76.**

United States District Court,
N. D. Indiana,
Fort Wayne Division.
July 20, 1970.

Ivan E. Bodensteiner, Norman P. Metzger, Legal Services Program, Fort Wayne, Ind., for plaintiffs.

Robert H. Berning, Fort Wayne, Ind., for Board of Directors of Allen County Dept. of Public Welfare.

Robert A. Zaban, Deputy Atty. Gen., for Indiana Dept. of State Public Welfare.

## MEMORANDUM OF DECISION AND ORDER

ESCHBACH, District Judge.

This suit essentially involves a *non-*constitutional challenge to a state welfare law and regulation based upon their alleged inconsistency with an Act of Congress. It is before this court upon the state and local welfare defendants' motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief may be granted. Plaintiffs allege a cause of action under 42 U.S.C. § 1983 (1964) and assert jurisdiction under 28 U.S.C. §§ 1331(a), 1343(3), and 1343(4).

For the reasons discussed below, defendants' motion to dismiss for failure to state a cause of action under § 1983 will be granted.

## I. NATURE OF ACTION

This is a class action brought upon behalf of all recipients of Aid to Families with Dependent Children (AFDC) pursuant to 42 U.S.C. §§ 601–609 (1964) and Ind.Stat.Ann. §§ 52–1113a, 52–1240 to 52–1251 (Burns 1964 Repl. & 1969 Supp.). In their second amended complaint, plaintiffs challenge Ind.Stat.Ann. § 52–1241 (Burns' 1969 Supp.) which imposes "dollar maximums" upon the amount of AFDC assistance and Forms 5A and 350, Ind. DPW, Public Assistance Manual Part IV E and IV F )revised 1966) which define the "standard of need" or financial eligibility re-quirements for AFDC assistance. Plaintiffs contend that these State welfare laws and regulations are inconsistent with § 402(a) (23) of the 1967 amendments to the Social Security Act, 42 U.S.C. § 602(a) (23) (Supp. IV, 1968) and are therefore invalid.

The original complaint in this cause was filed in August 1969. On December 31, 1969, all parties joined in a motion for a stay of proceedings until the Supreme Court issued an opinion in the then pending case of Rosado v. Wyman. This motion was granted until March 31, 1970 and subsequently extended until April 30, 1970. On April 6, 1970, the Supreme Court issued its opinion in Rosado v. Wyman, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970) and in a second relevant welfare case, Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970). Upon granting plaintiffs' motion to file an amended complaint, this court denied as moot the defendants' motion to dismiss the original complaint. As indicated at the pre-trial conference held on June 1, 1970, this present motion to dismiss filed by the state and local welfare defendants will be considered as directed toward the second amended complaint. Aside from adding several county officials who perform accounting and auditing functions, the second amended complaint is identical to the first amended complaint.

The Supreme Court has already determined the intention of Congress when it passed § 402(a) (23) of the 1967 Social Security Amendments. *See* Rosado v. Wyman, *supra,* 397 U.S. 397, 90 S.Ct. at 1218–1219. Furthermore, the Supreme Court has upheld "dollar maximums" against both constitutional and statutory challenges. *See* Dandridge v. Williams, *supra.* Plaintiffs herein seek, in effect, to have this court determine whether Indiana's welfare law and regulations conform with *federal law as determined in Rosado* and *Dandridge.* Yet these two Supreme Court decisions, although illuminating the merits of this action, shed little, if any, light upon the two legal is-

sues raised by defendants' motion to dismiss.

With respect to whether this court has subject matter jurisdiction, the Supreme Court in *Rosado* held *only* that the district court had *pendent* jurisdiction over the claim of incompatibility between New York welfare law and § 402(a) 23). Rosado v. Wyman, *supra* 397 U.S. 397, 90 S.Ct. at 1212–1214, 1223–1224 (concurring opinion of Douglas, J.). The Court explicitly reserved the question, as it had in King v. Smith, 392 U.S. 309, 312, 88 S.Ct. 2128, 20 L.Ed.2d 1118 n.3 (1968), whether district courts have original jurisdiction over suits, such as this one, challenging state AFDC provisions solely on the grounds that they are inconsistent with federal statute. *Id.* 397 U.S. 397, 90 S.Ct. at 1214 n.7.

With respect to whether plaintiffs have stated an action under § 1983, it should be observed that *Rosado* was *not* a § 1983 (federal) cause of action but, rather, was a pendent state action and that *King*, although a federal (§ 1983) action, did involve a substantial constitutional challenge. Here, on the other hand, plaintiffs have alleged a federal (§ 1983) action based solely on statutory grounds—an alleged incompatibility between state and federal welfare law. It must be noted here that with two exceptions discussed below, all reported § 1983 actions of which this court is aware have challenged the deprivation of a *constitutional* right.

It is not necessary for the disposition of this motion to decide whether this court has subject matter jurisdiction because, as will be discussed below, even assuming arguendo that it did have jurisdiction, plaintiffs have failed to state a cause of action under § 1983 and

therefore defendants' motion must be granted.

The court does note, however, that at least one court of appeals has recently held that a district court lacked jurisdiction under either 28 U.S.C. § 1343(3) and (4) or 28 U.S.C. § 1331 to consider challenges to a state welfare law based solely upon alleged inconsistency with federal law. McCall v. Shapiro, 416 F. 2d 246 (2d Cir. 1969), aff'g 292 F.Supp. 268 (D.Conn.1968). *But see* Gomez v. Florida State Employ. Serv., 417 F.2d 569, 580 and 580 n. 39 (5th Cir. 1969) (alternative holding: jurisdiction under § 1343(4) for § 1983 action to enforce statutory rights of migrant farm workers under Wagner-Peyser Act, 29 U.S.C. A. §§ 49 et seq.). In two recent cases which sought to enforce classic-type (*e. g.*, voting and nondiscrimination) federal civil rights laws, the Supreme Court noted that jurisdiction rested upon 28 U.S. C. § 1343(3) and (4). Allen v. State Bd. of Elections, 393 U.S. 544, 554–555, 89 S.Ct. 817, 22 L.Ed.2d 1 (1969) (statutory rights under 1964 Voting Rights Act); Jones v. Alfred H. Meyer Co., 392 U.S. 409, 412, 88 S.Ct. 2186, 20 L.Ed.2d 1189 n. 1 (1968) (statutory rights under 1866 Civil Rights Act, now § 1982). The rights of AFDC recipients which arise under the Social Security Act are not, it would appear, among these classic-type civil rights. *See* McCall v. Shapiro, *supra*. Moreover, the Supreme Court, as noted above, has twice reserved the question of whether a district court would have jurisdiction to consider challenges, such as this one, to state welfare laws based solely upon federal statutes.

Insofar as the discussion below of whether plaintiffs have stated a cause of action under § 1983 is applicable to the question of jurisdiction under § 1343,[1]

---

1. Analysis of the scope of § 1983 may apply with equal force to § 1343(3) of the Judicial Code. *See, e. g.*, Hague v. C.I.O., 307 U.S. 496, 507–510, 525–532, 59 S.Ct. 954, 83 L.Ed. 1423 (concurring opinion by Stone, J.); Holt v. Indiana Mfg. Co., 176 U.S. 68, 71–72, 20 S.Ct. 272, 44 L. Ed. 374 (1900); Eisen v. Eastman, 421

F.2d 560, n. 5 & n. 8 (2d Cir. November 28, 1969) (Friendly, J.).

Both § 1983 and § 1343(3) are derived from Section 1 of the Civil Rights Act of April 20, 1871, 17 Stat. 13, which is quoted below. When the federal laws were codified in 1874 and 1878, the substantive and jurisdictional provisions of

it would suggest that there is no jurisdiction here under § 1343.[2] Yet, as observed earlier, this court need not answer this jurisdictional question in order to dispose of defendants' motion.

## II. FAILURE TO STATE A CAUSE OF ACTION UNDER § 1983

### A. *Origins of § 1983*

What is now codified as 42 U.S.C. § 1983 (1964) is derived from Section 1 of the Civil Rights Act of April 20, 1871, 17 Stat. 13. The 1871 Act, which was popularly known as the "Ku Klux Act," was entitled "An Act to Enforce the Provisions of the Fourteenth Amendment to the Constitution of the United States, and for Other Purposes." Section 1 provided:

"That any person who, under color of law, statute, ordinance, regulation, custom, or usage, of any State, shall

Section 1 were separated into § 1979 of the Revised Statutes (now § 1983) and R.S. § 563(12) providing jurisdiction in the *district courts* and R.S. § 629(16) providing original jurisdiction in the circuit courts. When Congress abolished the original jurisdiction of the circuit courts and revised the Judicial Code in 1910, the narrower "equal rights" clause of R.S. § 629(16) was chosen in preference to the broader provision in R.S. § 563(12) which would have conferred *jurisdiction on district courts to hear all claims* under R.S. § 1979 alleging a deprivation of a right "secured by any law of the United States." It is this 1910 Congressional revision of the Judicial Code which is now 28 U.S.C. § 1343(3). *See* Note, "Proper Scope of the Civil Rights Act," 66 Harv.L.Rev. 1285, 1292 & 1292 n. 40 (1953).

The *still-guiding formulation of the scope of § 1343(3) vis-a-vis § 1331 is* that of Justice Stone: the special jurisdictional provisions not requiring proof of amount in controversy applies "whenever the right or immunity is one of personal liberty, not dependent for its existence upon the infringement of property rights." Hague v. C.I.O., *supra* 307 U. S. at 531, 59 S.Ct. 954, 971, 83 L.Ed. 1423. For an excellent recent analysis of Justice Stone's formulation see Judge Friendly's scholarly opinion in Eisen v. Eastman, *supra. See also* McCall v. Shapiro, *supra*; Hart & Wechsler, Federal Courts & Federal System 727–33, 840–42 (1953).

2. Cases employing what Hart & Wechsler have termed a "latitudinarian view" (Federal Courts, *supra* at 842) of Justice Stone's formulation of the scope of § 1343(3) have *all* involved *constitutional challenges to state statutes and practices. See, e. g.,* Hornsby v. Allen, 326 F.2d 605 (5th Cir. 1964) (denial of liquor license) ; Detroit Edison Co. v. East China Township Sch. Dist. No. 3, 378 F.2d 225 (6th Cir. 1967) (annexation) and cases cited in Hart & Wechsler, Federal Courts, *supra* at 842. Many of these "latitudinarian" cases are carefully analyzed in Hornbeak v. Hamm, 283 F.Supp. 549 (M.D. Ala.), aff'd mem., 393 U.S. 9, 89 S.Ct. 47, 21 L.Ed.2d 14 (1968), a three-judge constitutional challenge to nonuniform state property tax assessments which held no jurisdiction under § 1343(3). *See also* Abernathy v. Carpenter, 208 F. Supp. 793 (W.D.Mo.1962), aff'd mem., 373 U.S. 241, 83 S.Ct. 1295, 10 L.Ed. 2d 409 (1963) (cited with approval in Gray v. Morgan, *infra*).

Yet it is clear that the Court of Appeals for the Seventh Circuit has never adopted such a "latitudinarian view." *See, e. g.,* Gray v. Morgan, 371 F.2d 172 (7th Cir. 1966), cert. denied, 386 U.S. 1033, 87 S.Ct. 1484, 18 L.Ed.2d 596 (1967) (§ 1343(3) "applicable to personal liberty rather than a property or monetary claim.") ; Ream v. Handley, 359 F.2d 728 (7th Cir. 1966) (reh. denied).

In light of Hague, Eisen, Gray, and McCall, it is not surprising that plaintiffs, although alleging § 1343(3) in their complaint, do not argue in their brief for § 1343(3) jurisdiction. Rather, plaintiffs argue that § 1343(4) provides jurisdiction and rely principally upon the alternative holding in Gomez v. Florida State Employ. Serv., *supra.* Yet it may be seriously questioned whether this action involves the type of "civil rights" claim which Congress in 1957 intended to include within § 1343(4). As the House Report to the Civil Rights Act of 1957 indicated, § 1343(4) was *"merely a technical* [amendment] to the Judicial Code so as to conform it with amendments made to existing law by the preceding section of the bill." 1957 U.S.Code Cong. & Admin.News, p. 1976 (emphasis added). A much clearer statement of congressional intention would appear to be warranted before a district court should feel confident in finding jurisdiction under § 1343 (4)—especially where the Supreme Court has twice declined to pass upon this precise question in two recent welfare cases,

subject, or cause to be subjected, any person within the jurisdiction of the United States to the deprivation of any rights, privileges, or immunities *secured by the Constitution* of the United States, shall, any such law, statute, ordinance, regulation, custom, or usage of the State to the contrary notwithstanding, be liable to the party injured in any action at law, suit in equity, or other proper proceeding for redress; such proceeding to be prosecuted in the several district or circuit courts of the United States, with and subject to the same rights of appeal, review upon error, and other remedies provided in like cases in such courts, under the provisions of the act of the ninth of April[3], eighteen hundred and sixty-six, entitled 'An Act to protect all persons in the United States in their Civil rights, and to furnish the means of their vindication'; and the other remedial laws of the United States which are in their nature applicable in such cases." (Emphasis added.)

Section 1983 presently provides:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities *secured by the Constitution and laws*, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." (Emphasis added.)

■ All changes in the language, both additions (*e. g.*, "and laws") and deletions, and changes in the order of the clauses were made when the Act of 1871 was codified and appear without any explanation or comment in the Reviser's Draft (1872). 1 Revision of U.S.

Statutes, Draft 947 (1872). No alterations in statutory coverage may be based upon these changes by the reviser. *See* Adickes v. S. H. Kress & Co., 398 U.S. 144, 90 S.Ct. 1598, 1627, 26 L.Ed.2d 142 n. 15 (1970) (opinion of Brennan, J.); Monroe v. Pape, 365 U.S. 167, 212–213, 81 S.Ct. 473, 5 L.Ed.2d 492 n.18 (1961) (opinion of Frankfurter, J.); Hague v. C.I.O., *supra*, 307 U.S. at 510, 59 S.Ct. 954. *Cf.* Jones v. Alfred H. Meyer, *supra*, 392 U.S. at 422–423, 88 S. Ct. 2186 n. 29. As noted in the margin above,[4] the jurisdictional provisions of the 1871 Act were codified separately and, as amended by Congress in 1910, now appear in 28 U.S.C. § 1343(3). The intention of Congress in enacting the Civil Rights Act of 1871 must be determined from the *language of the original statute*, its legislative history and subsequent judicial interpretations.

*B. Deprivations of Rights or Privileges Arising Only Under the Social Security Act Do Not Fall Within the Scope of § 1983.*

Plaintiffs allege no deprivation of any right, privilege or immunity secured by the *Constitution*. Rather, plaintiffs claim they have been deprived of a right or privilege arising under a 1967 amendment to the Social Security Act because of an inconsistent State statute and regulation. Yet from the language of Section 1 of the Civil Rights Act of 1871, from which § 1983 is derived, it is evident that Congress created an action thereunder *only* for the deprivation of *constitutionally* secured rights, privileges, and immunities. The phrase "and laws" was added *not* by Congress but by the reviser commissioned by Congress to codify federal statutes. *See* 1 Revision of U.S. Statutes, Draft 947 (1872).

■ Its legislative history and subsequent interpretation by the Supreme Court reconfirm that Section 1 of the Civil Rights Act of 1871 (codified now

*King* and *Rosado*. The alternative holding in *Gomez* is supported only by a conclusionary paragraph in a footnote and does not appear to provide fully per-

suasive reasoning for such a potentially broad holding.

3. Act of April 9, 1866, 14 Stat. 27.

4. *See* note 1 *supra*.

as § 1983) means no more than the language actually employed by Congress said—it encompasses only constitutional rights and privileges. In Monroe v. Pape, the Supreme Court stated:

"Section 1979 came onto the books as § 1 of the Ku Klux Act of April 20, 1871. 17 Stat. 13. It was one of the means whereby Congress exercised the power vested in it by § 5 of the Fourteenth Amendment to enforce the provisions of *that Amendment*. Senator Edmunds, Chairman of the Senate Committee on the Judiciary, said concerning this section:

'The first section is one that I believe nobody objects to, as defining the *rights secured by the Constitution* of the United States when they are assailed by any State law or under color of any State law, and it is merely carrying out the principles of the civil rights bill [Act of April 9, 1866, 14 Stat. 27], which has since become a part of the Constitution'[5], viz., the Fourteenth Amendment.

Its purpose is plain from the title of the legislation, 'An Act to enforce the Provisions of the Fourteenth Amendment to the Constitution of the United States, and for other Purposes.' 17 Stat. 13. Allegation of facts constituting a deprivation under color of state authority of a *right guaranteed by the Fourteenth Amendment* satisfies to that extent the requirements of R.S. § 1979." Monroe v. Pape, supra, 365 U.S. at 171, 81 S.Ct. at 475–476 (footnotes omitted, emphasis added).

Senator Edmunds was the leader of those in the Senate who favored the passage of the Civil Rights Act of 1871.[6] Senator Edmunds' statement as to the purposes of the Act were also quoted again this Term by the Court in Adickes v. S. H. Kress & Co., *supra*, 398 U.S. at 165, 90 S.Ct. at 1612. At least twice again in Monroe v. Pape, the Court indicated that the Act of 1871 was meant to grant a remedy against the deprivation of *constitutional* rights.[7]

In Adickes v. S. H. Kress & Co., Justice Brennan, although dissenting to the majorities' holding that the "color of law" requirement applies equally to the "custom or usage" language of § 1983, was quite clear that the Act of 1871 was addressed to deprivations of *constitutional* rights. As Justice Brennan stated:

"In the 1871 Act, Congress undertook to provide broad federal civil remedies against interference with the exercise and actual enjoyment of *constitutional* rights, particularly the right to equal protection. Section 1 (now § 1983) provided a civil remedy for deprivation of any *constitutional* right by a person acting 'under color of any law, statute, ordinance, regulation, custom, or usage, or any State * * *.'" *Id.* at 1628 (emphasis added). *See id.* at 1635, 1636–1637 (opinion of Brennan, J.) and 1647 ("reach of § 1983 is constitutional rights, including those under the Fourteenth Amendment") (opinion by Douglas, J.).

The courts of appeals, including the Seventh Circuit, have also interpreted § 1983 as providing a civil remedy for the

---

5. Cong.Globe, 42d Cong., 1st Sess., App. 568 (footnote 4 of Court at 171, 81 S.Ct. 473).

6. Adickes v. S. H. Kress & Co., *supra*, 398 U.S. at 165, 90 S.Ct. at 1612.

7. "There can be no doubt * * * that Congress has the power to enforce provisions of the Fourteenth Amendment against those who carry a badge of authority of a State * * * whether they act in accordance with their authority or misuse it. [Citation omitted.] The question with which we now deal is the narrower one of whether Congress, in enacting § 1979, meant to give a remedy to parties deprived of constitutional rights, privileges, and immunities by an officials' abuse of his position." Monroe v. Pape, *supra* 365 U.S. at 171–172, 81 S.Ct. at 476. "It is abundantly clear that one reason the legislation was passed was to afford a federal right in federal courts because * * * the claims of citizens to the enjoyment of rights, privileges, and immunities guaranteed by the Fourteenth Amendment might be denied by the state agencies." *Id.* at 180, 81 S.Ct. at 480.

deprivation of *constitutional* rights. *See, e.g.,* Manion v. Holzman, 379 F.2d 843, 845 (7th Cir.) ("§ 1983 is designed to redress * * * deprivation of a constitutional right, privilege, or immunity * * *."), cert. denied, 389 U.S. 976, 88 S.Ct. 479, 19 L.Ed.2d 470 (1967); Davis v. Foreman, 251 F.2d 421, 422 (7th Cir.) ("The purpose of the Civil Rights Act is to enforce the Fourteenth Amendment."), cert. denied, 356 U.S. 974, 78 S.Ct. 1137, 2 L.Ed.2d 1148 (1958); Powell v. Workmen's Compensation Bd., 327 F.2d 131, 136 (2d Cir. 1964) (Section 1983 covers "any right protected through the Fourteenth Amendment * * *."); Congress of Racial Equality v. Clemmons, 323 F.2d 54, 59 (5th Cir. 1963) ("Civil Rights statutes [were] enacted to carry out the Fourteenth Amendment."), cert. denied, 375 U.S. 992, 84 S.Ct. 632, 11 L. Ed.2d 478 (1964).

In Hague v. C.I.O., Justice Stone after carefully analyzing the history of the Civil Rights Act of 1871 and subsequent congressional and judicial action stated that:

"The conclusion seems inescapable that the right conferred by the Act of 1871 to maintain a suit in equity in the federal courts to protect the suitor against a deprivation of *rights or immunities secured by the Constitution,* has been preserved, and that whenever the right or immunity is one of personal liberty, not dependent for its existence upon the infringement of property rights, there is jurisdiction in the district court under [28 U.S.C. § 1343(3)] of the Judicial Code to entertain it without proof that the amount in controversy exceeds [$10,-000]." Hague v. C.I.O., *supra,* 307 U. S. at 531–532, 59 S.Ct. at 971 (emphasis added).

Justice Stone's reconciliation of the special jurisdictional provisions of § 1343(3) with the generally applicable amount in controversy requirement of § 1331 also applies to the scope of § 1983. *See, e.g.,* Eisen v. Eastman, *supra* 421 F.2d 560 n. 8; Hart & Wechsler, Federal Courts, *supra* at 841; note 1 *supra.* As

the Court of Appeals for the Second Circuit recently stated:

"To qualify under § 1983 the right sought to be enforced must in the main be one incapable of pecuniary evaluation, such as personal liberty, unrelated to and not dependent upon an invasion or deprivation of property interests. A suit for the enforcement of such civil rights will, however, not necessarily be removed from the scope of § 1983 because their enforcement may possibly affect property interests where those interests are incidental or ancillary to the basic personal right. * * * [Where] the loss of freedom derives from and is dependent for its existence upon the infringement of the property right the action is not within the jurisdiction of § 1983. Howard v. Higgins, 379 F.2d 227, 228 (10th Cir. 1967); McManigal v. Simon, 382 F.2d 408, 410 (7th Cir. 1967); Ream v. Handley, 359 F.2d 728, 731 (7th Cir. 1966); Abernathy v. Carpenter, 208 F.Supp. 793 W.D.Mo. 1962), aff'd 373 U.S. 241, 83 S.Ct. 1295, 10 L.Ed.2d 409 (1963)." Bradford Audio Corp. v. Pious, 392 F.2d 67, 72 (2d Cir. 1968).

■ In sum, it is clear from its title, language and legislative history that Section 1 of the Civil Rights Act of 1871 was intended by Congress to provide a remedy for the deprivation of constitutionally protected rights, privileges and immunities. It is also reasonably clear that Congress meant to protect those rights and privileges which were then (1871) and now considered a person's *civil* rights, such as nondiscrimination, voting, free speech and assembly, equal protection and due process. The language in Holt v. Indiana Mfg. Co., *supra* note 1, that the present § 1983 speaks only to "civil rights" was recently reaffirmed in Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967), both in Chief Justice Warren's opinion for the majority, *id.* at 554, 87 S.Ct. 1213, and by Justice Douglas in dissent, *id.* at 563, 87 S.Ct. 1213. There does not appear to be any indication in the

language, legislative history or, aside from two cases discussed below, in the judicial interpretation of § 1983 to support plaintiffs' contention that it should encompass the type of statutory claim asserted here.

In support of their position, plaintiffs make several arguments—none of which persuade this court that the above analysis is incorrect. First, plaintiffs direct the court's attention to the language of § 1983 which confers a right of action to redress deprivations of "rights, privileges, or immunities secured by the Constitution *and laws*" (emphasis added). Yet, as indicated above, this is *not* the language of the Civil Rights Act of 1871 which Congress enacted into law. Rather, it is the language chosen and added by the codifier of the federal laws, and the revisions of the codifier may not be interpreted as modifying or expanding the intention of Congress as expressed in the language of Section 1 of the Act of 1871, 17 Stat. 13.[8] *See* Stephan v. United States, 319 U.S. 423,

426, 63 S.Ct. 1135, 87 L.Ed. 1490 (1943); Act of June 27, 1866 §§ 2–3, 14 Stat. 74.

Plaintiffs also rely upon the Court of Appeals for the Fifth Circuit's holding in Gomez v. Florida State Employment Service, *supra*, 417 F.2d at 579, that § 1983 may be utilized to enforce statutory rights under the Wagner-Peyser Act. However, this case is not entirely persuasive. It should be observed initially that the *Gomez* court relied upon language found in § 1983 ("and laws") which was *not* enacted by Congress. Both the *Gomez* court and plaintiffs rely primarily upon a statement in the Supreme Court's opinion in Peacock v. City of Greenwood, 384 U.S. 808, 86 S.Ct. 1800, 16 L.Ed.2d 944 (1964). Yet this observation by the Supreme Court, quoted in the margin,[9] was dicta and must be interpreted with great reservation— especially considering the significant change it would produce in the scope of Section 1 of the Civil Rights Act of 1871 as enacted by Congress.[10] Finally, the

8. Even assuming arguendo that the Act of 1871 as revised by the codifier (now § 1983) and not as enacted by Congress constitutes the law, § 1983 reads "Constitution *and* laws." (Emphasis added.) There is no allegation by plaintiffs, nor does it appear that there could by any, of any constitutional right and privilege of which they were deprived in addition to their alleged rights under § 402(a) (23) of the 1967 amendments to the Social Security Act. *Cf.* Adickes v. S. H. Kress & Co., *supra*, 398 U.S. at 188, 90 S. Ct. at 1619 (opinion of Brennan, J.).

9. After holding that plaintiffs could not remove their state criminal obstructing public street charge to federal court under 28 U.S.C. § 1443, the Court proceeded in dicta to indicate ways other than removal by which plaintiffs' federal rights could be protected and/or vindicated. After noting the Court's appellate jurisdiction under 28 U.S.C. § 1257, habeas corpus, and injunctions, the Court continued: "Other sanctions, civil and criminal, are available in the federal courts against officers of a State who violate the petitioners' federal constitutional and statutory rights. Under 42 U.S.C. § 1983 (1964 ed.) the officers may be made to respond in damages not only for violations of rights conferred by federal equal

civil rights laws, but for violations of other federal constitutional and statutory rights as well. Monroe v. Pape, [*supra*] * * *. But the question before us now is not whether state officials in Mississippi have engaged in conduct for which they may be civilly or criminally liable under federal law. The question, precisely, is whether the individual petitioners are entitled to remove these state prosecutions to a federal court under the provisions of 28 U.S.C. § 1443(1)." Peacock v. City of Greenwood, *supra*, 384 U.S. at 830–831, 86 S.Ct. at 1813–1814.
The Court's statement that § 1983 encompasses more than "*equal* civil rights" (emphasis added) was intended to distinguish the scope of § 1983 from that of 28 U.S.C. § 1443 which is limited to *equal* civil rights. Id. at 825–826, 86 S.Ct. 1800; State of Georgia v. Rachel, 384 U.S. 780, 788–792, 86 S.Ct. 1783, 16 L.Ed.2d 925 (1966). That the scope of § 1983 *does* encompass more than *equal* civil rights was established by the holding in Monroe v. Pape which involved police conduct during an unconstitutional search, arrest, and detention.

10. As Judge Friendly concluded in Eisen v. Eastman:
"It is quite hard to believe * * * that the framers either of § 1 of the

*Gomez* court characterizes the aim of the plaintiffs, poor migrant farm workers, as follows:

> "They seek to protect their *right* to decent housing and sanitary living conditions so they and their children may be free of disease. They seek to protect their ability to work for the wages which Congress has in effect determined to be the *minimum* to which they are entitled. They seek sanctions for having been deprived of some of those few protections *designed by Congress to lift them out* of economic-sociologic peonage. Such fundamental human, highly personalized rights are just the stuff from which § 1983 claims are to be made." Gomez v. Florida State Employ. Serv., *supra,* 417 F.2d at 579 (emphasis added).

These aims are based upon the enforcement of a series of comprehensive and specific regulations promulgated by the Secretary of Labor which govern the wages, working, living and sanitary conditions of farm workers recruited through the state employment services.[11]

On the other hand, the plaintiffs' alleged rights under § 402(a) (23) of the 1967 amendments to the Social Security Act are significantly different. Section 402 does not require decent and sanitary housing, nor assure a minimum income, nor was it intended to end economic need. Rather, the purposes of § 402, as expressed by the Supreme Court, are much more modest.

> "We think two broad purposes may be ascribed to § 402: First, to require States to face up realistically to the magnitude of the public assistance requirement and lay bare the extent to which their programs fall short of fulfilling actual need; second, to prod the States to apportion their payments on a more equitable basis. Consistent with this interpretation of § 402, a State *may,* after recomputing its standard of need, *pare down payments* to accommodate budgetary realities *by reducing the percent of benefits paid* or switching to a percent reduction system, but it may not obscure the *actual* [emphasis in original] standard of need." Rosado v. Wyman, *supra,* 397 U.S. 397, 90 S.Ct. at 1218 (emphasis added).

As plaintiffs concede in their briefs, even if the court were to grant all the relief sought in their second amended complaint, it is highly unlikely that this would result in any increase at all in welfare assistance payments. *See* Rosado v. Wyman, *supra;* Dandridge v. Williams, *supra. But cf.* Lampton v. Bonin, 304 F.Supp. 1384 (E.D.La.1969), vacated, 397 U.S. 663, 90 S.Ct. 1408, 25 L.Ed. 2d 644 (1970). In other words, this action does not challenge state action which, in the words of *Gomez,* denies "rights of an essentially personal nature, touching such intimate things as living

Civil Rights Act of 1871 or of its successors would have thought the statute could be invoked by a person complaining of state taxes allegedly barred by the Commerce Clause. Moreover, Carter v. Greenhow, 114 U.S. 317 [5 S.Ct. 928, 962, 29 L.Ed. 202, 207] (1885); Pleasants v. Greenhow, *supra,* 114 U. S. 323 [330, 5 S.Ct. 931, 29 L.Ed. 204], and Holt v. Indiana Mfg. Co., *supra,* 176 U.S. 68 [20 S.Ct. 272, 44 L.Ed. 374], are still on the books [limiting § 1983 to civil rights], and a reading that would push 42 U.S.C. § 1983 and 28 U.S.C. § 1343(3) to the full extent of their language must either overrule those cases, which we surely cannot, or propound a basis for distinction that is not plain to us." Eisen v. Eastman, *supra* 421 F.2d at 566 (footnote omitted).

Here, there is no contention that there is any violation of a constitutional right, and it is hard to believe that Congress intended to include within the Act of 1871 a claim under a law providing for income assistance payments. *Cf.* Commonwealth v. Welosky, 276 Mass. 398, 177 N.E. 656 (1931), cert. denied, 284 U.S. 684, 52 S.Ct. 201, 76 L.Ed. 578 (1932) (statute making "[a] person qualified to vote" liable to jury service held not to require inclusion of women in jury lists after nineteenth amendment).

11. These regulations are summarized in Gomez v. Florida State Employ. Serv., *supra* 417 F.2d at 570–575.

and eating conditions, freedom from the marks of modern peonage, work at starvation wage levels in degrading poverty." Gomez v. Florida State Employ. Serv., *supra*, 417 F.2d at 579.

The only other case of which this court is aware that held a deprivation of a statutory right or privilege *alone* is sufficient to state a cause of action under § 1983 is Bomar v. Keyes, 162 F.2d 136 (2d Cir. 1947), cert. denied, 332 U.S. 825, 68 S.Ct. 166, 92 L.Ed. 400 (1947). In *Bomar*, the statutory privilege involved was that of the plaintiff to serve as a federal juror without being discharged from her position as a public school teacher. This privilege was implied from the statutory definitions of the qualifications for serving as a juror. Yet *Bomar* is of questionable weight. The decision has been severely criticized[12] and the court found its *jurisdiction* under § 1983. *Id.* at 138. Yet, it is clear that § 1983 does *not* confer jurisdiction. It appears, therefore, that the complaint in *Bomar* should properly have been dismissed for lack of jurisdiction under 28 U.S.C. § 1343(3). As one commentator stated: "the statutory qualifications for federal jurors were not specifically designed to create equal rights any more than any federal law which confers a given right upon a number of individuals." Note, "Proper Scope of Civil Rights Act," *supra* at 1293.

Moreover, both *Gomez* and *Bomar* relied upon the language of § 1983 and did not consider the fact that Section 1 of the Civil Rights Act of 1871 as enacted by Congress did *not* contain the words "and laws."

■ To hold, as plaintiffs propose, that the deprivation of statutory rights arising under the Social Security Act, as amended in 1967, is sufficient to state an action under § 1983 would require

this court to ignore the plain and unambiguous language of the Civil Rights Act of 1871. This court may not and should not disregard the unambiguous language of an act of Congress. The legislative history and many Supreme Court cases indicate that Congress was concerned with protecting the civil rights of Negroes and plaintiffs' claim does not fall within a realistic interpretation of the phrase "civil rights."

The effect of a holding that litigants claiming a right arising under a noncivil rights statute, such as 42 U.S.C. § 602(a) (23) (Supp. IV, 1968), may proceed directly into a federal court via § 1983 and 28 U.S.C. § 1343(4) would be, in many cases, to circumvent and ignore Congressional authority for establishing appropriate means of redressing federal statutory rights. This the court may not do. *Cf.* Adickes v. S. H. Kress & Co., *supra*, 398 U.S. at 150, 90 S.Ct. at 1604–1605, n. 5; Waters v. Wisconsin Steel Works, 427 F.2d 476 (7th Cir. April 28, 1970) (Swygert, C. J.); Schatte v. International Alliance of Theatrical Employees, 182 F.2d 158, 166–167 (9th Cir.), cert. denied, 340 U.S. 827, 71 S.Ct. 64, 95 L.Ed. 608, 1950, reh. denied, 340 U.S. 885, 71 S.Ct. 194, 95 L.Ed. 643. That Congress has not provided for original access to the federal courts for the redress of rights arising under the 1967 amendment to the Social Security Act is not unusual. *See generally* Hart & Wechsler, Federal Courts, *supra* at 727–733 (development of federal question jurisdiction). Congress has not given the district courts original jurisdiction in all cases involving issues of federal law. *See* 28 U.S.C. § 1331(a) (federal question jurisdiction only where amount in controversy exceeds $10,000).

Plaintiffs are not, however, without judicial redress. They may file their suit in the courts of the State of Indiana. And, Congress has provided that if a state court decision upholds a state

---

12. Note, "Proper Scope of Civil Rights Act, *supra* 66 Harv.L.Rev. at 1291–93; Note, "The Civil Rights Act and Mr. Monroe, "49 Calif.L.Rev. 145, 150–51 (1961).

statute against a federal statutory challenge, then the plaintiffs may appeal to the Supreme Court. *See* 28 U.S.C. § 1257(2).