**Lewis V. SMITH and Cleo Smith,
Plaintiffs-Appellants,**

v.

**Elizabeth Ann PETERS, Defendant-
Appellee.**

**No. 72–1746.**

United States Court of Appeals,
Sixth Circuit.

Argued June 9, 1973.

Decided Aug. 7, 1973.

**800**

Stephen G. Danko, Southgate, Mich., for plaintiffs-appellants; D'Avanzo & Danko, Southgate, Mich., on brief.

Boyd F. Taylor, London, Ky., for defendant-appellee; Hamm, Taylor, Milby & Farmer, London, Ky., on brief.

Before WEICK, EDWARDS and Mc-CREE, Circuit Judges.

WEICK, Circuit Judge.

This appeal presents the question whether federal courts are required to apply the Federal Rule of Civil Procedure (Rule 3) or a state statute which conflicts therewith, to determine the issue as to when an action is commenced in the federal courts.

The question arose in an action for damages in excess of $10,000, for personal injuries resulting from an automobile accident which occurred in Kentucky on May 3, 1970. The action was filed on April 23, 1971, by the plaintiffs against the defendant, in the United States District Court for the Eastern District of Michigan. Plaintiffs were residents of Michigan; the defendant was a resident of Kentucky; and jurisdiction was based on diversity of citizenship. Summons on the complaint was issued and served on the defendant by the United States Marshal in Kentucky, on April 28, 1971.

Defendant filed a motion to dismiss for lack of jurisdiction since she had been served in Kentucky, rather than in Michigan. Plaintiffs then filed a motion to transfer the case to the Eastern District of Kentucky (where defendant resided), which motion was granted by the Court as being "in the interest of justice," as provided by 28 U.S.C. §

1404(a). After the transfer, plaintiffs caused another summons to issue on August 3, 1971, which summons was served on the defendant on August 10, 1971.

Defendant, after the transfer, renewed her motion to dismiss the action and filed motions to quash the Marshal's return of service issued by the District Court in Michigan, and also in Kentucky. The District Court granted the motion to dismiss, holding that Kentucky's one-year statute of limitations was a bar, and that the timely filing of the action in the District Court in Michigan did not toll the operation of the Kentucky statute of limitations.

It was the view of the District Court that Rule 3 of the Federal Rules of Civil Procedure, which provides:

"A civil action is commenced by filing a complaint with the court."

was not controlling over Kentucky's statute with respect to the time of commencement of an action. The Kentucky statute provided:

"An action shall be deemed to commence on date of the first summons or process issued in good faith from the court having jurisdiction of the cause of action." (KRS 413.250)

A saving clause is provided in KRS 413.270(1), as follows:

"If an action is commenced in due time and in good faith in any court of this state and the defendants or any of them make defense, and it is adjudged that the court has no jurisdiction of the action, the plaintiff or his representative may, within ninety (90) days from the time of that judgment, commence a new action in the proper court. The time between the commencement of the first and last action shall not be counted in applying any statute of limitation."

The District Court was of the view that the decision of the Supreme Court in Erie R. R. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), required the Court to decide all "outcome determinative questions" according to state law, and it held that Rule 3 of

Federal Rules of Civil Procedure, which conflicts with KRS 413.250, was not controlling. The effect of the District Court's holding was to render inapplicable Rule 3. We reverse.

■ The complaint was timely filed in the United States District Court for the Eastern District of Michigan, within the one-year period required by the Kentucky statute of limitations, and defendant was served in Kentucky within that period, although such service was not authorized. The Michigan statute of limitations was three years. M.S.A. 27A 5805, M.C.L.A. § 600.5805. Thus plaintiffs' complaint was timely filed under the laws of both Michigan and Kentucky.

■ In our opinion, the District Court erred in holding that the manner of commencement of an action in the federal courts is an "outcome determinative question" which a federal court, under Erie R. R. v. Tompkins, *supra*, is required to determine under state, rather than federal, law. In our view the decision as to when the action was commenced determines only whether the action is to continue; it is purely procedural, and does not relate to the substantive issues of the case.

This question, however, was set to rest by the Supreme Court in Hanna v. Plumer, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965), which case was not considered by the District Judge in his Memorandum Opinion. *Hanna*, like the present case, was a diversity action for damages in excess of $10,000, for personal injuries, the action having been filed in the federal court against an executor of an estate. Rule 4(d)(1) of the Federal Rules of Civil Procedure required service of process to be made on the defendant personally, or by leaving copies at his dwelling house with some person of suitable age and discretion, residing therein. The summons was left with defendant's wife at his residence, concededly in compliance with Rule 4(d)(1). The service, however, did not comply with a Massachusetts statute which required summons to be served personally on the defendant in an action against an executor or administrator. The defendant filed a motion to dismiss on the ground that Massachusetts' one-year statute of limitations barred the action since the defendant had never been served as required by the Massachusetts statute. The District Court, relying on Ragan v. Merchants Transfer & Whse. Co., 337 U.S. 530, 69 S.Ct. 1233, 93 L.Ed. 1520 (1949), and Guaranty Trust Co. v. York, 326 U.S. 99, 65 S. Ct. 1464, 89 L.Ed. 2079 (1945), dismissed the action. The Court of Appeals affirmed. The Supreme Court, in a unanimous decision, reversed, holding that Rule 4(d)(1) was "designed to control service of process in diversity actions . . .," and it was a valid rule. (380 U.S. at 463, 85 S.Ct. at 1140).

The Court said:

"In the first place, it is doubtful that even if there were no Federal Rule making it clear that in-hand service is not required in diversity actions, the *Erie* rule would have obligated the District Court to follow the Massachusetts procedure. 'Outcome-determination' analysis was never intended to serve as a talisman. Byrd v. Blue Ridge Cooperative, 356 U.S. 525, 537, 78 S.Ct. 893, 2 L.Ed.2d 953. Indeed, the message of York itself is that choices between state and federal law are to be made not by application of any automatic, 'litmus paper' criterion, but rather by reference to the policies underlying the *Erie* rule. Guaranty Trust Co. v. York, *supra*, 326 U.S. at 108–112, 65 S.Ct. 1464." (Id. at 466, 467, 85 S.Ct. at 1141).

The Court further said:

"The difference between the conclusion that the Massachusetts rule is applicable, and the conclusion that it is not, is of course at this point 'outcome-determinative' in the sense that if we hold the state rule to apply, respondent prevails, whereas if we hold that Rule 4(d)(1) governs, the litigation will continue. But in this sense *every* procedural variation is 'out-

come-determinative.' For example, having brought suit in a federal court, a plaintiff cannot then insist on the right to file subsequent pleadings in accord with the time limits applicable in the state courts, even though enforcement of the federal timetable will, if he continues to insist that he must meet only the state time limit, result in determination of the controversy against him. So it is here. Though choice of the federal or state rule will at this point have a marked effect upon the outcome of the litigation, the difference between the two rules would be of scant, if any, relevance to the choice of a forum. Petitioner, in choosing her forum, was not presented with a situation where application of the state rule would wholly bar recovery; rather, adherence to the state rule would have resulted only in altering the way in which process was served. Moreover, it is difficult to argue that permitting service of defendant's wife to take the place of in-hand service of defendant himself alters the mode of enforcement of state-created rights in a fashion sufficiently 'substantial' to raise the sort of equal protection problems to which the *Erie* opinion alluded." (380 U.S. at 468, 469, 85 S.Ct. at 1142).

The Court further said:

"There is, however, a more fundamental flaw in respondent's syllogism: the incorrect assumption that the rule of Erie R. Co. v. Tompkins constitutes the appropriate test of the validity and therefore the applicability of a Federal Rule of Civil Procedure. The *Erie* rule has never been invoked to *void* a Federal Rule. It is true that there have been cases where this Court has held applicable a state rule in the face of an argument that the situation was governed by one of the Federal Rules. But the holding of each such case was not that *Erie* commanded displacement of a Federal Rule by an inconsistent state rule, but rather that the scope of the Federal Rule was not as broad as the losing party urged, and therefore, there being no Federal Rule which covered the point in dispute, *Erie* commanded the enforcement of state law." (Emphasis added.) (380 U.S. at 469–470, 85 S.Ct. at 1143).

Like the Massachusetts statute in *Hanna*, the Kentucky statute, KRS 413.-250, clashes with Rule 3. In closing, the Court in *Hanna* said:

"To hold that a Federal Rule of Civil Procedure must cease to function whenever it alters the mode of enforcing state-created rights would be to disembowel either the Constitution's grant of power over federal procedure or Congress' attempt to exercise that power in the Enabling Act. Rule 4(d)(1) is valid and controls the instant case." (*Id.* 380 U.S. at 473–474, 85 S.Ct. at 1145).

The decision in *Hanna* is somewhat in conflict with the Court's decision in Ragan v. Merchants Transfer & Whse. Co., 337 U.S. 530, 69 S.Ct. 1233, 93 L.Ed. 1520 (1949). However, Mr. Justice Harlan, in his concurring opinion, in referring to *Ragan*, stated with characteristic simplicity: "I think that the decision was wrong." 380 U.S. at 477, 85 S.Ct. at 1147.

 The fact that the District Court in Michigan had no personal jurisdiction over the defendant does not militate against its right to transfer the case. As well stated by Mr. Justice Black, who wrote the opinion for the Court in Goldlawr, Inc. v. Heiman, 369 U.S. 463, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962):

"Section 1406(a), under which the Pennsylvania District Court transferred this case, provides:

'The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.'

Nothing in that language indicates that the operation of the section was

intended to be limited to actions in which the transferring court has personal jurisdiction over the defendants. And we cannot agree that such a restrictive interpretation can be supported by its legislative history—either that relied upon by the Court of Appeals or any other that has been brought to our attention. The problem which gave rise to the enactment of the section was that of avoiding the injustice which had often resulted to plaintiffs from dismissal of their actions merely because they had made an erroneous guess with regard to the existence of some elusive fact of the kind upon which venue provisions often turn. Indeed, this case is itself a typical example of the problem sought to be avoided, for dismissal here would have resulted in plaintiff's losing a substantial part of its cause of action under the statute of limitations merely because it made a mistake in thinking that the respondent corporations could be 'found' or that they 'transact . . . business' in the Eastern District of Pennsylvania. The language and history of § 1406(a), both as originally enacted and as amended in 1949, show a congressional purpose to provide as effective a remedy as possible to avoid precisely this sort of injustice.

"The language of § 1406(a) is amply broad enough to authorize the transfer of cases, however wrong the plaintiff may have been in filing his case as to venue, whether the court in which it was filed had personal jurisdiction over the defendants or not. The section is thus in accord with the general purpose which has prompted many of the procedural changes of the past few years—that of removing whatever obstacles may impede an expeditious and orderly adjudication of cases and controversies on their merits. When a lawsuit is filed, that filing shows a desire on the part of the plaintiff to begin his case and thereby toll whatever statutes of limitation would otherwise apply. The filing it-

self shows the proper diligence on the part of the plaintiff which such statutes of limitation were intended to insure. If by reason of the uncertainties of proper venue a mistake is made, Congress, by the enactment of § 1406(a), recognized that 'the interest of justice' may require that the complaint not be dismissed but rather that it be transferred in order that the plaintiff not be penalized by what the late Judge Parker aptly characterized as 'time-consuming and justice-defeating technicalities.' It would at least partially frustrate this enlightened congressional objective to import ambiguities into § 1406(a) which do not exist in the language Congress used to achieve the procedural reform it desired." (369 U.S. at 465–467, 82 S.Ct. at 915–916).

We followed Goldlawr in Taylor v. Love, 415 F.2d 1118 (6th Cir. 1969); *cf.*, Carson v. U-Haul Co., 434 F.2d 916 (6th Cir. 1970).

In Mohler v. Miller, 235 F.2d 153 (6th Cir. 1956), Chief Judge Simons, writing for the Court, stated:

"This does not, however, answer the question as to when the appellant's action was begun. In a well considered opinion in Isaacks v. Jeffers, [10 Cir., 144 F.2d 26] supra, it was held that where a complaint was filed in the Federal District Court before the expiration of the statute of limitations, the action was commenced and the running of the statute was interrupted by the filing of such complaint although process was not actually served until more than 60 days after the expiration of the limitation period. While state law controls the time within which an action must be begun, the manner in which an action is commenced and when it is deemed to have begun, are governed by the law of the forum. These matters are procedural and not substantive. This reasoning was approved and followed by Judge Learned Hand in Bomar v. Keyes, supra [2 Cir., 162 F.2d 136, 140], wherein it was explicitly held: 'How-

ever, we now hold that it is the filing of the complaint which tolls the statute. We think that Rules 3 and 4(a) of the Rules of Civil Procedure, 28 U. S.C.A. \* \* \* have made no longer applicable § 17 of the New York Civil Practice Act, which fixes the beginning of the action at the date when the writ is served, or is put into the sheriff's hands for service.' " (*Id.* at 155).

He further stated:

"Nor is this a case where 'the limitation is annexed as a condition to the very right of action created. The Civil Rights Act is not cast in that form; and when a right is not so conditioned, the statute of limitations is treated as going to the remedy.' Bomar v. Keyes, supra, 162 F.2d at page 140. There is no such condition in the Michigan statute." (*Id.* at 155–156).

The judgment of the District Court is reversed, and the cause is remanded for trial.